IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EVANS AND ASSOCIATES, INC.,

       Plaintiff,

vs.                                                     CIV 04-961 RB/KBM

MARNITA AND SHELBY ELBORN,

       Defendants.

And

SHELBY ELBORN,

    Third-Party Plaintiff,

v.

RONALD FEDER,

    Third-Party Defendant.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW ON DAMAGES AGAINST DEFENDANT MARNITA ELBORN

    Presiding District Judge Robert C. Brack entered default judgment against Defendant Marnita Elborn and referred the matter to me for an evidentiary hearing on damages. Having held the hearing on August 4, 2005, I now make the following proposed findings of fact and conclusions of law for his consideration.

## FINDINGS OF FACT

    1. On May 26, 2005, Plaintiff moved for a Default Judgment to be entered against Defendant Marnita Elborn.

2. On June 30, 2005, the court entered a default judgment as a sanction for Defendant's failure to comply with Court orders and discovery, and directed an evidentiary hearing to be conducted by the Federal Magistrate Judge on the issue of damages.

3. After notice to all parties, an evidentiary hearing was held on August 4, 2005 on the issue of damages before the Honorable Karen Molzen, United States Magistrate Judge.

4. Defendant, Marnita Elborn, gave notice *via facsimile* to the Court that she would not attend the hearing.  *See Court's Exhibit 1.*

5. Evidence was introduced through the sworn testimony of Ron Feder, President of Evans and Associates and through authenticated business records of Evans & Associates.

6. Ms. Marnita Elborn began working as a bookkeeper accountant for Evans & Associates sometime during 1997.

7. Starting in 1998, Ms. Marnita Elborn began embezzling funds from Evans & Associates.

8. Ms. Elborn's practice was to request company officials to sign checks representing that the checks were to be used to pay for various company expenses.  The payees were not identified on the checks, and Ms. Elborn would insert her name after the check had been signed.  On two checks, she fraudulently identified her husband as the payee and then forged his signature.

9. Ms. Elborn continued to work for Evans & Associates from 1997 through July of 2004, when she resigned from her employment to move to Maryland with her husband and family.

10. Shortly thereafter, Mr. Ron Feder, President of Evans & Associates, began receiving bills which he thought had been paid.

11. As the number of unpaid bills increased, the accountant firm of Beasley, Mitchell & Company was retained to do a complete audit of outstanding obligations.

12.  As a result of that audit, it was learned that from January of 1998 through May of 2004, Marnita Elborn embezzled Two Hundred Fifty-Six Thousand Four Hundred and Ninety-Four Dollars and Twenty-Six cents ($256,494.26) from Evans & Associates.  *See Plaintiff's Exhibit B.*

13.  As a result of Ms. Elborn's embezzlement, she failed to make payments on Plaintiff's obligations that had become due.  This resulted in the accrual of additional interest as a result of her intentional failure to pay these obligations on behalf of Evans & Associates.

14.  As a result of Marnita Elborn's embezzlement of funds from Evans & Associates, Evans & Associates incurred interest of $15,845.38 on a line of credit with the First National Bank located in Las Cruces, New Mexico. *See Plaintiff's Exhibit C.*

15.  The above interest owed to First National Bank on the line of credit was interest that would not have been accrued if Ms. Elborn had made the payments at the appropriate time.

16.  Additionally, interest of $18,032.97 was accrued on the Evans & Associates Wells Fargo credit card as a result of Ms. Elborn failing to make payments on the credit card when due. *See Plaintiff's Exhibit D.*

17.  Evans & Associates had a policy of routinely paying bills when received in order to avoid interest payments.

18.  In September 2004, Evans & Associates was required to borrow $85,000.00 from Rincon Investments in order to pay taxes that had not been paid, interest and penalties and to bring current outstanding obligations of Evans & Associates.

19.  As a result from the loan from Rincon Investments to Evans & Associates, interest of $4,568.59 has been paid to Rincon Investments in order to keep Evans & Associates solvent and to mitigate further damages. *See Plaintiff's Exhibit E.*

20. Beasley, Mitchell & Company, a firm of Certified Public Accountants was retained in order to do an audit of the financial status of Evans & Associates.

21. As a result of Ms. Marnita Elborn's failure to pay taxes when due, Beasley, Mitchell & Company were also required to be retained in order to compute taxes and negotiate on behalf of Evans & Associates with both the Internal Revenue Service and the New Mexico Bureau of Taxation and Revenue.

22. The services rendered by Beasley, Mitchell & Company totaled $24,071.50. *See Plaintiff's Exhibit F.*

23. Tax penalties and interest owed to the Internal Revenue Service and the New Mexico Bureau of Taxation and Revenue totaled $3,377.41. *See Plaintiff's Exhibit H.*

24. The statutory interest of 8 ¾% on the embezzled funds of $256,494.26 for one year would equal $23,365.53.

25. Evans & Associates were forced to retain counsel to represent them in this lawsuit and have paid attorney's fees totaling $14,363.08.

26. Total damages suffered by Evans & Associates, less attorney's fees, total $345,755.64. *See Plaintiff's Exhibit A.*

27. No restitution or reimbursement has been made by Ms. Marnita Elborn to Evans & Associates.

## **CONCLUSIONS OF LAW**

1. Marnita Elborn was an employee of Evans & Associates from 1997 until she left Evans & Associates in July 2004.

2. Marnita Elborn served in a position of trust and responsibility with Evans & Associates as the individual in charge of all financial matters.

3. Marnita Elborn violated this trust and responsibility by intentionally committing acts of conversion (embezzlement) while employed at Evans and Associates.

4. As a result of her malicious and fraudulent conduct, Evans & Associates suffered damages. The general measure of damages is an amount of money that will reasonably and fairly compensate Evans & Associates for any of the elements of reasonably foreseeable damages proved by Evans & Associates by a preponderance of the evidence to have been caused by Marnita Elborn's wrongful conduct.

5. Evans & Associates have suffered actual damages of $256,494.26 as a result of Marnita Elborn's fraudulent conduct and conversion of money.

6. Evans & Associates have suffered compensatory damages of $62,518.44 as a result of: (a) Marnita Elborn's failure to pay interest due on the Wells Fargo and First National Bank account; (b) her failure to pay taxes and interest on the taxes and penalties; (c) accrued interest on a loan necessary to keep the company solvent; and (d) payment for accounting services of Beasley, Mitchell & Company.

7. Evans & Associates has lost the use of the income embezzled by Marnita Elborn and is entitled to receive interest for the loss of use of that income.

8. The statutory interest rate is 8 ¾%.

9. The loss of the use of the money for one year or prejudgment interest at 8 ¾% for the

total of $256,494.00 of embezzled funds is $23,365.53.  *See Plaintiff's Exhibit I.*

    10.  The total compensatory and actual damages to Plaintiff is $345,755.64.

    11.  "Malicious conduct" is the intentional doing of the wrongful act with knowledge that the act was wrongful.  *See* N.M.U.J.I. 13-1827.

    12.  On June 20, 2005, Ms. Marnita Elborn pled no contest in Third Judicial District Court to 39 criminal counts of embezzlement over $2,500.00 relating directly to money embezzled from Evans & Associates.  Plaintiff contends that the no contest pleas are the equivalent of guilty pleas and Plaintiff relies on Judge Sutin's opinion in *Turner v. Silver*, 92 N.M. 313, 317, 587 P.2d 966 (Ct. App. 1978) fir this proposition.  There, Judge Sutin stated that

> a party who is charged with a traffic offense and pays a fine because
> he understood or thought that he was guilty, is akin to a party who
> pleads guilty.  It constitutes an admission against interest and is
> admissible in evidence.  Admissions made by a party are the
> strongest kind of evidence.  Such admissions are binding and
> conclusive upon him if uncontradicted and unexplained.

92 N.M. at 315, 587 P.2d at 968 (citations omitted).  If Plaintiff is arguing that collateral estoppel applies to Ms. Elborn's "analogous" no contest plea such that a contrary finding is precluded as a matter of law, I disagree:

> the court of appeals has repudiated *Turner*.  As the court of
> appeals later explained, *Turner v. Silver* expresses only the opinion
> of its author, Judge Sutin; other members of the panel did not join
> in Judge Sutin's opinion.  Thus, with respect to the effect of
> admissions, *Turner* is not a decision of the Court of Appeals. . . .
> An admission in pleadings, or in testimony, is sufficient to support
> a finding.  However, an admission "is by no means conclusive. . . .
> [T]he admission is only one factor to be considered together with
> the other evidence."

*See Martinez v. Yellow Freight System, Inc.,* 113 N.M.366, 370, 826 P.2d 966, 969 (1992) (citations and quotations omitted).

13. Yet even if the no contest plea could be characterized as an "admission," it would not be admissible in these civil proceedings.

> ***Evidence of*** a plea of guilty, later withdrawn, ***a plea of no contest*** or guilty but mentally ill, or of an offer to plead guilty, no contest or guilty but mentally ill to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, ***is not admissible in any civil or criminal proceeding against the person who made the plea*** or offer.

NMRA Rule 5-304 (emphasis added); *see also State v. Baca*, 101 N.M. 415, 417, 683 P.2d 970, 972 (Ct. App. 1984). *But see State v. Marquez*, 105 N.M. 269, 731 P.2d 965 (Ct. App. 1987) (holding that prior conviction resulting from nolo contendere plea can be used to enhance sentence under habitual criminal statute).[1] Even under the Federal Rules of Evidence, "a nolo contendere plea is not admissible as evidence under Fed.R.Evid. 410. . . ." *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 606 n.2 (10th Cir. 1988).

14. Based upon the preponderance of the evidence admitted at the damages hearing, Ms. Marnita Elborn intentionally engaged in ongoing repeated prohibited conduct over a period of years that was willful, reprehensible, malicious and fraudulent entitling Plaintiff to an award of punitive damages.

15. When a possible term of incarceration could be imposed for engaging in the same

---

[1] As Plaintiff correctly notes, the *Marquez* decision stated that "[a] plea of nolo contendere accepted and recorded in open court is tantamount to an admission of guilt." *Marquez*, 105 N.M. at 271, 731 P.2d at 967. The *Marquez* court noted, however, that "[i]n *State v. Baca*, the state focused on defendant's plea of no contest, rather than the conviction based on the plea. Had the state sought to revoke defendant's probation based on the conviction, rather than the plea itself, we might have reached a different result." *Id. See also State vs. Woodruff*, 124 N.M. 388, 951 P.2d 605 (1997) (rejecting Defendant's argument "that a defendant who does not face incarceration is more likely to plead ***guilty***, notwithstanding his or her innocence, and that an ***uncounseled*** defendant in such a situation may not anticipate the risk of subsequent enhancement resulting in incarceration at a later time.") (emphasis added).

wrongful conduct, a substantial punitive damage award is justified.  *See Aken vs. Plains Electric Generation & Transmission Coop, Inc.*, 132 N.M. 401, 411, 49 P.3d 662, 671 (2002).

15.  Given the length of time the fraudulent ongoing and willful nature of Defendant's conduct, and the criteria reviewing punitive damages in New Mexico set forth in *Aken v. the Plains Electric Generation & Transmission Coop*, punitive damages in the amount of $100,000.00 are appropriate.

16.  Damages awarded are $256,494.00 for actual damages, $74,898.30 for compensatory damages and $100,000.00 for punitive damages for a total of award for damages of $431,392.30.

17.  Based upon the findings set forth above, Plaintiff requests that the judgment of the Court should be written as to reflect that this debt and the damages would not be dischargeable in bankruptcy.  However, as the Tenth Circuit has noted:

> the bankruptcy court in a dischargeability action under  section 523(a) ultimately determines whether or not a debt is dischargeable. . . [, but] the doctrine of collateral estoppel may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability, as the Supreme Court noted in *Brown* [*v. Felsen,* 442 U.S. 127, 99 S. Ct. 2205, 60 L.Ed.2d 767 (1979)].  We find no countervailing statutory policy which would prevent application of the doctrine.  Consequently, collateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment.

*In re Wallace v. Wallace*, 840 F.2d 762, 764-65 (10th Cir. 1988).  Thus, it will be for a bankruptcy court to determine that the factual findings set forth above mandate the finding that the debt is non-dischargeable in bankruptcy.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings of fact and conclusions of law.  If no objections are filed, no appellate review will be allowed.**

_____
Karen B. Molzen
United States Magistrate Judge